[Cite as *State v. Dorsey*, 2012-Ohio-611.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | Case No. 11 CA 39 |
| RICHARD DORSEY | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:          Criminal Appeal from the Court of Common
                                  Pleas, Case No.  06 CR 763


JUDGMENT:                         Affirmed in Part; Reversed in Part and
                                  Remanded


DATE OF JUDGMENT ENTRY:           February 17, 2012


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

KENNETH W. OSWALT                         ROBERT D. ESSEX
PROSECUTING ATTORNEY                      604 East Rich Street
20 South Second Street, Fourth Floor      Columbus, Ohio  43215
Newark, Ohio  43055

*Wise, J.*

**{¶1}**   Appellant Richard Dorsey appeals from his felony convictions for rape and gross sexual imposition in the Licking County Court of Common Pleas. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

**{¶2}**   On February 25, 2006, a Pataskala police officer responded to an allegation of sexual assault reported by Pamela Parker on behalf of her mother, Bonnie Parker, age seventy-nine at the time. Prior to February 2006, Bonnie had lived independently; Bertha Dorsey, her daughter, and appellant, Bertha's husband, helped provide her with needed care and assistance, including delivery of prescription medicine and meals.

**{¶3}**   The report was turned over to Pataskala Detective Andy Waugh for investigation. After the detective interviewed Bonnie Parker, she was taken to Grant Hospital in Columbus for a forensic rape examination. In the meantime, detectives collected evidence from her apartment.

**{¶4}**   After additional police investigation, the Licking County grand jury returned an indictment in December 2006 charging appellant with three identically-worded counts of rape and three identically-worded counts of gross sexual imposition ("GSI"). Each count identified Bonnie Parker as the alleged victim and averred that the offense occurred "between the dates of February 2005 through February 22, 2006." Each count alleged that each offense was committed by force or threat of force "and/or" while Bonnie's ability to consent to, or resist, sexual relations was substantially impaired due to her mental or physical condition, or advanced age.

**{¶5}** The case first went to trial on June 14, 2007. Bonnie Parker did not testify in the jury trial. The parties agreed before trial that she was incompetent to testify.

**{¶6}** At the conclusion of the State's case, the trial court directed an acquittal on two of the rape counts. The jury returned verdicts of guilty on the remaining counts, and rendered special findings stating that the State had failed to prove that appellant compelled his mother-in-law to submit to sexual conduct or sexual contact by force or threat of force. The court thereafter sentenced appellant to a maximum ten-year prison term on the rape conviction and concurrent one-year prison terms on the GSI convictions.

**{¶7}** Appellant thereupon filed a notice of appeal to this Court. He therein raised a number of issues, including sufficiency of the evidence, manifest weight of the evidence, and ineffective assistance of trial counsel. However, on May 23, 2008, this Court affirmed appellant's convictions and sentence. See *State v. Dorsey*, Licking App.No. 2007-CA-091, 2008-Ohio-2515 ("Dorsey I").

**{¶8}** The Ohio Supreme Court refused to accept appellant's subsequent appeal. See *State v. Dorsey*, 119 Ohio St.3d 1487, 2008-Ohio-5273.

**{¶9}** Appellant thereafter filed a federal habeas corpus action in the United States District Court for the Southern District of Ohio. The federal court determined that as a result of a faulty jury instruction, appellant's case should be remanded to the Licking County Common Pleas Court for a new trial. See *Dorsey v. Banks* (S.D. Ohio 2010), 749 F.Supp.2d 715

**{¶10}** The second jury trial commenced on January 24, 2011, as further analyzed infra. The State again relied on Bonnie's forensic interview at the hospital as

part of its evidence of a specific incident of sexual intercourse between her and the appellant.

{¶11} The jury ultimately returned guilty verdicts on the Rape and GSI counts. Appellant was again sentenced to a total of ten years of incarceration. In addition, over trial counsel's objection, appellant was labeled a Tier III sex offender.

{¶12} On March 29, 2011, appellant filed a notice of appeal. He herein raises the following five Assignments of Error:

{¶13} "I.  THE TRIAL COURT VIOLATED APPELLANT'S RIGHT OF CONFRONTATION AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION BY IMPROPERLY ADMITTING HEARSAY STATEMENTS OF THE ALLEGED VICTIM.

{¶14} "II. THE DOCTRINE OF COLLATERAL ESTOPPEL BARRED THE ADMISSION OF EVIDENCE OF THE USE OF FORCE WHEN APPELLANT HAD BEEN PREVIOUSLY BEEN (SIC) ACQUITTED OF THAT CONDUCT. ADMISSION OF THIS EVIDENCE AND FAILURE TO GIVE A LIMITING INSTRUCTION CONSTITUTED DOUBLE JEOPARDY AND VIOLATED APPELLANT'S RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW AS GUARANTEED BY THE UNITED STATES CONSTITUTION AS WELL (SIC) THE OHIO CONSTITUTION.

{¶15} "III. THE ADMISSION OF OTHER ACTS EVIDENCE VIOLATED APPELLANT'S RIGHT TO A FAIR TRIAL AND DUE PROCESS. IN ADDITION, THE TRIAL COURT FAILED TO PROPERLY INSTRUCT THE JURY ON THE PROPER

LIMITATIONS OF OTHER ACTS EVIDENCE THEREBY VIOLATING APPELLANT'S RIGHT TO A FAIR TRIAL AND DUE PROCESS.

{¶16} "IV. APPELLANT'S CONVICTIONS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶17} "V. RETROACTIVE APPLICATION OF THE PROVISIONS OF SENATE BILL 10 TO APPELLANT VIOLATES THE BAN ON RETROACTIVE LAWS SET FORTH IN ARTICLE II, SECTION 28 OF THE OHIO CONSTITUTION AS DECIDED IN STATE V. WILLIAMS, SLIP OPINION NO. 2011-OHIO-3374 AND THE BAN ON EX POST FACTO LAWS CONTAINED (SIC) THE U.S. CONSTITUTION."

I.

{¶18} In his First Assignment of Error, appellant argues the trial court violated his constitutional right to confrontation by allowing the introduction at trial of out-of-court statements by the victim.[1] We disagree.

{¶19} "[Q]uestions of the scope and effect of constitutional protections, such as the Sixth Amendment, are matters of law and therefore reviewed de novo." *State v. Dunivant*, Stark App.No. 2003CA00175, 2005-Ohio-1497, ¶ 7, citing *United States v. Wilmore* (C.A.9, 2004), 381 F.3d 868, 871.

{¶20} In *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, the United States Supreme Court held that under the Confrontation Clause, "testimonial" statements of a witness who does not appear at trial may not be

---

[1]     Appellant herein has limited his assigned error to issues of right to confrontation. We therefore need not address the issue of hearsay evidence per se.

admitted or used against a criminal defendant unless the declarant is unavailable to testify and the defendant has had a prior opportunity for cross-examination.

{¶21} About two years after *Crawford* was decided, the Ohio Supreme Court, in *State v. Stahl,* 111 Ohio St.3d 186, 2006-Ohio-5482, considered whether an adult rape victim had made testimonial statements to a nurse practitioner during a medical examination at a hospital "DOVE" unit specializing in health care for victims of rape. Regarding statements made to a medical professional, the Court adopted the objective-witness test from *Crawford*: "For Confrontation Clause purposes, a testimonial statement includes one made 'under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' " Id. at paragraph one of the syllabus, quoting *Crawford* at 52. The Court also held: "In determining whether a statement is testimonial for Confrontation Clause purposes, courts should focus on the expectation of the declarant at the time of making the statement; the intent of a questioner is relevant only if it could affect a reasonable declarant's expectations." Id. at paragraph two of the syllabus.

{¶22} Appellant herein further directs us to *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, wherein the Ohio Supreme Court held: "Statements made to interviewers at child-advocacy centers that serve primarily a forensic or investigative purpose are testimonial and are inadmissible pursuant to the Confrontation Clause when the declarant is unavailable for cross-examination. *** Statements made to interviewers at child-advocacy centers that are made for medical diagnosis and treatment are nontestimonial and are admissible without offending the Confrontation Clause." Id. at paragraphs one and two of the syllabus.

**{¶23}** The Court in *Arnold* thus reaffirmed the "primary-purpose test" set forth in *State v. Siler*, 116 Ohio St.3d 39, 876 N.E.2d 534, 2007-Ohio-5637, which addressed, in light of *Crawford*, a child declarant's statements made in the course of a police interrogation.[2]

**{¶24}** In the case sub judice, it is undisputed that Bonnie Parker was incompetent at the time of the first trial and was not able to testify. By the time of the second trial, she had passed away. Appellant specifically contends that Bonnie's statement to Kailey Mahan, a forensic nurse and coordinator of the sexual assault nurse examiner ("S.A.N.E.") program, identifying appellant as her assailant is testimonial in nature under *Crawford* and is inadmissible pursuant to the Sixth Amendment. In particular, appellant challenges the following statements made by Bonnie to Nurse Mahan as part of a sexual assault evaluation, which Mahan repeated at trial:

**{¶25}** "He [Appellant] grabbed me[,] hugged me and grabbed my boob and my pussy. He got on top of me and put his dick in my pussy and I fought him. He's been doing it to me for a while. If I'm not at home he does it to Pam." Tr. at 185.

**{¶26}** At the point in time Bonnie made these statements to Nurse Mahan, she had already identified appellant as her assailant to the police. Mahan stated there is usually a victim's advocate present during the examination. Tr. at 170-172. She also stated that she completed a Sexual Assault Forensic Exam form. Tr. at 173. As part of

---

[2] This may create the question of what test to apply now ("primary purpose" versus "objective witness") if the questioner of the declarant is not a law enforcement officer or agent thereof, but is acting in somewhat of a dual role of medical professional and investigator. However, we find this distinction, in light of *Arnold*, does not affect our decision under the circumstances of the case sub judice.

the exam, she collected biographical information, medical history and information related to the assault. Mahan also noted that the consent form Bonnie signed authorized her to provide any evidence, photographs, records, and other information to Licking County law enforcement officials or the Prosecutor's Office for criminal investigation and prosecution. Tr. at 196.

**{¶27}** Upon review, we find that Bonnie's statements, in toto, describing forms of sexual activity that would cause a medical professional to be concerned about the possibility of injuries and sexually transmitted diseases, are primarily statements for medical diagnosis and treatment. See, e.g., *Arnold* at ¶39. We further find Bonnie's objective motivation in making these statements under the circumstances was to assist her medical providers.

**{¶28}** Accordingly, upon review, we hold Bonnie Parker's statements (Tr. at 185) to Nurse Mahan were not testimonial and were properly admitted into evidence by the trial court pursuant to the rule of law set forth in *Crawford.*

**{¶29}** Appellant's First Assignment of Error is therefore overruled.

II.

**{¶30}** In his Second Assignment of Error appellant argues the trial court's allowance of "use of force" evidence violated the doctrine of collateral estoppel and denied him of his constitutional right to a fair trial and due process of law. We disagree.

**{¶31}** The doctrine of collateral estoppel "holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of

action in the two actions be identical or different." *Pisani v. Pisani*, Cuyahoga App.No. 78744, 2001 WL 280076, citing *Teachers Assn. v. SERB* (1998), 81 Ohio St.3d 392, 395, 692 N.E.2d 140 (additional citations omitted).

**{¶32}** The double jeopardy clause of the Fifth Amendment to the U.S. Constitution incorporates the doctrine of collateral estoppel in criminal proceedings. See *Schiro v. Farley* (1994), 510 U.S. 222, 232; *Ashe v. Swenson* (1970), 397 U.S. 436, 445.

**{¶33}** Appellant notes that he was originally charged with Rape in violation of O.R.C. 2907.02 and Gross Sexual Imposition in violation of O.R.C. 2907.05. The original verdict forms contained specific findings on the issue of force. In the first trial, the jury found that appellant did not use force or threat of force to facilitate the rape or the gross sexual impositions.

**{¶34}** Nonetheless, in the present case, the trial court arguably permitted evidence regarding the use of force in the form of the testimony of S.A.N.E. Nurse Mahan testimony regarding bruising and tearing and that Bonnie had stated she fought appellant during the incident in question. Additionally, appellant maintains, evidence of the other two rape charges for which appellant was formerly acquitted was introduced when Nurse Mahan testified that Bonnie Parker told her appellant had been "doing it to me for awhile" (Tr. at 185) as well as appellant's testimony from the previous trial of other sexual acts with Bonnie. Appellant contends this evidence was violative of the doctrine of collateral estoppel.

**{¶35}** However, we note the original charges against appellant included allegations of rape under R.C. 2907.02(A)(2) and gross sexual imposition under R.C.

2907.05(A)(1), which contain the "force or threat of force" element, *as well as* allegations of rape under R.C. 2907.02(A)(1)(c) and gross sexual imposition under R.C. 2907.05(A)(5), which contain the requirement for the State to prove that the victim's "ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age." The rape count utilized "and/or" language within the original indictment, as did the gross sexual imposition count.

{¶36} As the State properly observes in its brief, while appellant is correct in observing that the jury in his initial trial, via completion of a special finding, acquitted him of the allegations that he purposely compelled Bonnie to submit to the sexual acts "by force, or threat of force" (R.C. 2907.02(A)(2) and R.C. 2907.05(A)(1)), he was never acquitted of engaging in sexual conduct/contact with Bonnie while "knowing or having reasonable cause to believe that her ability to resist or consent was substantially impaired because of a mental or physical condition or because of advanced age" (R.C. 2907.02(A)(1)(c) and R.C. 2907.05(A)(5)). As such, appellant's claim of a double jeopardy violation based on collateral estoppel cannot stand under the circumstances of this case, where the jury in his second trial convicted him only under the "non-force" sections under R.C. 2907.02(A)(1)(c) and R.C. 2907.05(A)(5).

{¶37} Furthermore, it stands to reason that if a victim is injured in an unwanted sexual act, it may be because the victim attempted to resist, but was unable to do so successfully due to substantial impairment based on her condition or older age. In addition, the presence of injuries upon a medical examination of the victim may be relevant to the timing of the sexual assault. These are factors which a jury should be able to consider, even though the rape allegations are not based on "force or threat of

force." For example, in *State v. Lopez,* Cuyahoga App. No. 94312, 2011-Ohio-182, the Eighth District Court of Appeals, in analyzing a "sufficiency of the evidence" argument by a defendant who had been acquitted of rape "by force" and only convicted of the rape of a victim whose ability to resist or consent was "substantially impaired," factored into its analysis the presence of injuries to the victim. Id. at ¶ 62. As we recognized in *Dorsey I*, "[a] finding that [the defendant] did not use force does not equate with a finding that the victim had the ability to consent or to resist." Id. at ¶ 47.

{¶38} We therefore find no double jeopardy or due process violation in the proceedings below as urged by appellant. The Second Assignment of Error is overruled.

III.

{¶39} In his Third Assignment of Error, appellant contends the trial court's allowance of "other acts" evidence violated his constitutional rights to a fair trial and due process of law. We disagree.

{¶40} The admission or exclusion of relevant evidence rests in the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 180, 510 N.E.2d 343. As a general rule, all relevant evidence is admissible. Evid.R. 402; cf. Evid.R. 802. Our task is to look at the totality of the circumstances in the case sub judice, and determine whether the trial court acted unreasonably, arbitrarily or unconscionably in allowing or excluding the disputed evidence. *State v. Oman* (Feb. 14, 2000), Stark App.No.1999CA00027, at 2.

{¶41} Evid.R. 404(A) provides, with certain exceptions, that evidence of a person's character is not admissible to prove the person acted in conformity with that

character. Evid.R. 404(B) sets forth an exception to the general rule against admitting evidence of a person's other bad acts. Said rule states as follows: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Finally, Evid.R. 403(B) grants a court discretion to limit questioning if the "probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."

**{¶42}** The three portions of testimony specifically challenged by appellant are (1) Nurse Mahan's recollection that Bonnie told her that appellant "does it to Pam [appellant's sister-in-law]," (2) Pamela Parker's own testimony that appellant had exposed his genitals to her, and (3) Detective Waugh's testimony that he found a semen stain on a chair in the living room.

**{¶43}** Certainly, the State may not "parade past the jury a litany of potentially prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo." *Huddleston v. United States* (1988), 485 U.S. 681, 689, 108 S.Ct. 1496, 99 L.Ed.2d 771. Likewise, a prior act which is " * * * too distant in time or too removed in method or type has no permissible probative value. * * *" *State v. Snowden* (1976), 49 Ohio App.2d 7, 10, 359 N.E.2d 87, 91.

**{¶44}** However, in the case sub judice, we find the allowance of challenged testimony was within the trial court's discretion as proof, at least, of motive, intent, and/or absence of mistake. Appellant herein never denied having sexual contact and intercourse with his elderly mother-in-law; he rather advanced the defense theory that

the acts were consensual. Evidence that he had attempted other sexually-oriented actions targeting another member of his wife's family, i.e., his sister-in-law Pamela, was permissible to enable the jury to consider whether his actions were part of a larger plan to engage in unwanted sexual advances toward his female in-laws. Furthermore, the trial court instructed the jury that they could not consider the evidence at issue to prove the character of appellant. See Tr. at 568. It is well-established that juries are presumed to follow and obey the limiting instructions given them by the trial court. *State v. DeMastry,* 155 Ohio App.3d 110, 127, 799 N.E.2d 229, 2003-Ohio-5588, ¶ 84, citing *State v. Franklin* (1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1.

**{¶45}** Finally, regarding the detective's testimony regarding a semen stain in the living room, we find such evidence merely went to the general description of the crime scene and the inference that appellant had at some point ejaculated in that room, and any error in that regard must be considered harmless under Crim.R. 52(A), which states that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."

**{¶46}** Upon review, we are unable to find that the challenged "other acts" testimony constituted an abuse of discretion or deprived appellant of his right to a fair trial.

**{¶47}** Appellant's Third Assignment of Error is overruled.

IV.

**{¶48}** In his Fourth Assignment of Error, appellant contends his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. We disagree.

**{¶49}** In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

**{¶50}** Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered ." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. See also, *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175, 485 N.E.2d 717.

**{¶51}** In the case sub judice, appellant was convicted under Count I of rape. The pertinent statute states as follows:

**{¶52}** "R.C. 2907.02 (A)(1): No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

**{¶53}** " * * *

**{¶54}** "(c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to

resist or consent is substantially impaired because of a mental or physical condition or because of advanced age."

{¶55} Appellant was also found guilty of gross sexual imposition, in violation of R.C. 2907.05, which states:

{¶56} "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

{¶57} " * * *

{¶58} "(5) The ability of the other person to resist or consent or the ability of one of the other persons to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the ability to resist or consent of the other person or of one of the other persons is substantially impaired because of a mental or physical condition or because of advanced age."

{¶59} We note that " '[s]ubstantial impairment' need not be proven by expert medical testimony; it may be proven by the testimony of persons who have had some interaction with the victim and by permitting the trier of fact to obtain its own assessment of the victim's ability to either appraise or control her conduct." *State v. Brady,* Cuyahoga App.No. 87854, 2007-Ohio-1453, ¶ 78.

{¶60} The first State's witness was Dr. Ronald Vargo, who was Bonnie Parker's physician for approximately 15 years from 1993-2007. Dr. Vargo testified that Ms. Parker had type 2 diabetes, high blood pressure, elevated cholesterol and a history of

hypertension. He stated that over time, these conditions progressed, and he diagnosed Bonnie with dementia in 2003. Tr. 130-131. Over the objection of defense counsel, Dr. Vargo testified that someone in Bonnie's condition could not consent to sexual activity. Tr. at 148-151. On cross examination, he stated that the stages of dementia are sometimes referred to mild, moderate, or severe, but he opined that such classification was arbitrary. Tr. at 151-153. In the context of a person's ability to consent to sexual activity, he also testified that it would be difficult for a medical doctor or a layperson to determine when a person with dementia has crossed over from "changes in anatomy to really affecting cognition." Tr. at 154. He stated that there are numerous mental status exams available but that he did not administer any of them. Tr. at 156-158. He stated that a CT scan had been done in 2006, but it did not indicated any infarcts (blocking off of blood supply in the brain), or any acute intracranial abnormalities. Tr. 161-162.

{¶61} The next witness for the State was Kailey Mahan, who, as previously noted, was working at Grant Hospital as an ER and SANE nurse. She testified that the purpose of her forensic exam of Bonnie was both medical and legal. In addition to recounting what Bonnie told Mahan during the exam about appellant's sexual conduct and contact with her (see Assignment of Error I, supra), she testified to the results of a physical examination that revealed a bruise on Bonnie's thigh, a tear to the center of the labia majora, and bruising on the vaginal wall. Tr. at 187. She opined that the injuries were consistent with the history reported to her. Tr. at 191.

{¶62} Ms. Mahan testified that she never would have let Bonnie sign the sexual assault examination documents if she felt Bonnie didn't understand what she was signing. Tr. at 198. She stated that Bonnie appeared to be able to do things for herself

like brushing her teeth and using mouthwash and was able to provide all of her demographic information including her full social security number. Tr. at 210.

**{¶63}** The next State's witness was BCI forensic scientist Amy Wanken. She testified that she analyzed a semen stain from a chair and that appellant could not be ruled out as a contributor. The frequency of the profile reappearing in the general population would be 1 in 941,600,000,000,000,000 individuals. Tr. at 249-250.

**{¶64}** The next State's witness was Pataskala Police Department Detective Andy Waugh. Detective Waugh was dispatched to the residence in Pataskala and spoke with Pam Parker and Bonnie Parker. As a result of his interviews, he processed the scene for evidence. Tr. at 272. As part of his investigation, he swabbed a chair for the presence of bodily fluids or semen. Tr. at 276. He also interviewed appellant as part of his investigation. He noted appellant had denied that there would be any reason his semen-based DNA would be in Bonnie's apartment. Tr. at 285.

**{¶65}** On cross examination, the detective stated that he had Bonnie sign a consent-to-search form for her apartment and that he felt confident that she understood what she was doing and that she had a right to refuse. Tr. at 297. He also recalled that Bonnie, in conversing with him, relayed information in a "normal and consistent" fashion. Tr. at 300.

**{¶66}** The next State's witness was Pamela Parker, Bonnie's daughter and appellant's sister-in-law. She testified that in 2005, her mother had Alzheimer's and needed assistance that she couldn't provide. Tr. at 308-309. Pamela described Bonnie as often acting like "a kid," even needing help picking out her clothes. Tr. at 308, 334. Over the objection of appellant, Pamela testified that in February 2006, appellant

exposed himself to her at her apartment. Tr. at 315-323. Pamela stated that her mother was not involved in that situation. Tr. at 327.

{¶67} The next State's witness was Jackie Duffy. In April of 2006, Duffy started providing home health aide services for Bonnie Parker. Tr. at 346-347. Jackie summarized that Bonnie essentially needed help "with everything." Tr. at 349-350. The final State's witness was Mary Bailey, who initially called the police and was present for the interviews and was at the hospital when the examination was performed on Bonnie. Tr. at 359-361.

{¶68} The parties stipulated as exhibits parts of a transcript of former home health aide Carol Moulder's prior testimony and all of the appellant's prior testimony subject to previously made objections. See Tr. at 379-381; State's Exhibit 10. In appellant's prior trial testimony, he had acknowledged knowing that Bonnie had dementia and said he had engaged in several consensual sexual encounters with her. He also admitted to masturbating in Bonnie's apartment. See State's Exhibit 11.

{¶69} The defense then called Dr. Christopher Demas. Dr. Demas operated a family practice in Westerville, Ohio, and had experience in geriatrics as well. Dr. Demas testified that he reviewed the sexual assault forensic exam form, Dr. Vargo's records for Bonnie, and the testimony of Nurse Mahan and Dr. Vargo. Tr. 427-428.

{¶70} As part of his review of records, he reviewed the CT scan report of Bonnie from April 10, 2006. He testified that after his review of the records, there was not any objective evidence to support a diagnosis of "multi-infarct dementia." Tr. 431. He testified that based on his review, Bonnie did have the ability to appraise and control her conduct. He also described the physical findings of the physical examination as

non-specific, meaning it could come from many things. Tr. 439-440. He also testified that according to the death certificate, the causes of death were respiratory failure, cardiac failure, electrolyte imbalance and finally senile dementia. He stated that according to the death certificate, the probable onset of senile dementia was approximately November of 2008. Tr. 442-443.

**{¶71}** Nonetheless, despite the defense expert testimony, viewing all of the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that the State had met the elements of the crimes of rape and gross sexual imposition as previously set forth, particularly the requirement of showing that Bonnie's ability to resist or consent was substantially impaired.

**{¶72}** In regard to manifest weight of the evidence, we emphasize that "[w]hile the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight *** ." *State v. Craig* (Mar. 23, 2000), Franklin App. No. 99AP-739, citing *State v. Nivens* (May 28, 1996), Franklin App. No. 95APA09-1236. We recognize that an array of evidence, both from the prosecution and the defense, was presented to the jury on the critical issue of whether or not Bonnie was actually able to resist appellant's advances due to her age and level of dementia. However, upon review, we hold the jurors in this case, in resolving any conflicts in the evidence, did not create a manifest injustice requiring a new trial.

**{¶73}** Appellant's Fourth Assignment of Error is overruled.

V.

**{¶74}** In his Fifth Assignment of Error, appellant argues that he was erroneously designated a Tier III sexual offender. We agree.

**{¶75}** Appellant directs us to *State v. Williams*, __ Ohio St.3d ___, 2011-Ohio-3374, wherein the Ohio Supreme Court, following its decision concerning the constitutionality of sexual offender reclassification in *State v. Bodyke*, 126 Ohio St. 3d 266, 2010-Ohio-2424, determined that the current version of O.R.C. 2950, otherwise known as S.B.10, as applied to defendants who committed sex offenses prior to its enactment, violates the prohibition against retroactive laws under Section 28, Article II of the Ohio Constitution.

**{¶76}** In this case, appellant's offenses occurred prior to the January 1, 2008, effective date of S.B. 10. The State concedes herein that *Williams*, which postdated the judgment and sentence of appellant, mandates reversal. The matter will therefore be remanded for a sex offender classification hearing in accordance with the pre-S.B. 10 classification scheme.

**{¶77}** Appellant's Fifth Assignment of Error is sustained.

**{¶78}** For the foregoing reasons, the judgment of the Licking County Court of Common Pleas, Ohio, is affirmed in part and reversed in part, with directions to conduct a classification hearing in accordance with law.

By: Wise, J.

Gwin, P. J., and

Delaney, J., concur.

_____

_____

_____

JUDGES

JWW/d 0206

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO

FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
|     Plaintiff-Appellee | : | |
| | : | |
|   -vs- | : | JUDGMENT ENTRY |
| | : | |
| RICHARD DORSEY | : | |
| | : | |
|     Defendant-Appellant | : | Case No. 11 CA 39 |


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Licking County, Ohio, is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

Costs to be split evenly between the parties.


_____

_____

_____

JUDGES