[Cite as *State v. Nestor*, 2016-Ohio-1333.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 27800 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DUSTIN NESTOR | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 2014 06 1784 (B) |

DECISION AND JOURNAL ENTRY

Dated: March 30, 2016

MOORE, Judge.

{¶1} Defendant, Dustin Nestor, appeals from the judgment of the Summit County Court of Common Pleas. We affirm.

I.

{¶2} On June 18, 2014, Mr. Nestor was stopped by police officers after purchasing Sudafed at a local pharmacy. Thereafter, a canine sniff of his vehicle was performed, and the canine alerted for the presence of drugs. After a search of his car revealed items that officers suspected were involved in the manufacture of methamphetamine, the officers placed Mr. Nestor under arrest. Due to statements made by Mr. Nestor and his wife after the stop, officers searched Mr. Nestor's residence, where they located additional items associated with the manufacture of methamphetamine.

{¶3} Thereafter, the Summit County Grand Jury indicted Mr. Nestor on the following charges: one count of illegal manufacture of drugs, two counts of illegal assembly or possession

of chemicals for the manufacture of drugs, and two counts of endangering children. Mr. Nestor pleaded not guilty at his arraignment, and he later filed a motion to suppress evidence. The trial court denied the motion, and Mr. Nestor amended his plea to no contest. The trial court found Mr. Nestor guilty and imposed sentence. Mr. Nestor timely filed a notice of appeal, and he now raises one assignment of error for our review.

## II.

### **ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED IN DENYING [MR. NESTOR'S] MOTION TO SUPPRESS.

{¶4} In his sole assignment of error, Mr. Nestor argues that the trial court erred in denying his motion to suppress. We disagree.

> Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Internal citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. *Accord State v. Hobbs*, 133 Ohio St.3d 43, 2012-Ohio-3886, ¶ 6 (*Burnside* applied).

{¶5} Here, at the suppression hearing, the State presented the testimony of police officers involved in stopping Mr. Nestor and searching his vehicle and residence. Officer Bernard Cirullo of the City of Tallmadge Police Department testified that he was on duty on the evening of June 18, 2014, and he was listening to live feed from the National Precursor Log Exchange ("NPLEx"), which provides the names and driver's license numbers of those who purchase Sudafed. Mr. Nestor's name came across the feed for purchasing Sudafed at a local

CVS. The officer ran Mr. Nestor's driver's license number through the department's LEADS system, which revealed that Mr. Nestor had a suspended driver's license and a warrant for his arrest. Officer Cirullo obtained Mr. Nestor's BMV photo and went to CVS to attempt to locate Mr. Nestor. When Officer Cirullo was driving into the CVS parking lot, he recognized Mr. Nestor as the driver of a car that was preparing to exit the parking lot. The officer stopped Mr. Nestor and obtained his driver's license. Officer Cirullo then began investigating whether the warrant was still active, and he further investigated Mr. Nestor's purchase history of Sudafed. Officer Cirullo learned that NPLEx indicated that a woman with the same address and last name as Mr. Nestor, who Officer Cirullo assumed was his wife, had purchased Sudafed one hour prior to Mr. Nestor. The officer then called a canine unit to the scene.

{¶6} The canine unit arrived within ten minutes, and the canine performed a sniff of Mr. Nestor's car. The canine alerted to the passenger side of Mr. Nestor's vehicle while the officer was still awaiting warrant confirmation and was still checking NPLEx purchase information. When the canine alerted, the officers instructed Mr. Nestor to step away from the car. The officers then searched the car. The officers did not locate any narcotics, but they did find the Sudafed that Mr. Nestor had just purchased together with several lithium batteries in the glove box. Based on his experience, Officer Cirullo recognized these items as those used in the manufacture of methamphetamine. The officer read Mr. Nestor his *Miranda* rights and detained him in the officer's cruiser. Thereafter, Mr. Nestor indicated that a friend of his had manufactured methamphetamine in his garage in Akron. Officer Cirullo maintained that he had an audio recording of his conversation with Mr. Nestor that occurred inside of the cruiser. However, the officer had been unable to bring the recording to the suppression hearing.

{¶7} While the officer was detaining Mr. Nestor, Mr. Nestor's wife arrived at CVS. The officer learned during the stop that the Nestors had children. Based upon the officer's concerns regarding the methamphetamine production at the Nestors' home, Officer Cirullo contacted Officer Dave Christopher Crockett of the Akron Police Department.

{¶8} Officer Crockett testified that, after he received the call from Officer Cirullo, he went to CVS and spoke with the Tallmadge police officers. Officer Crockett learned that Mr. Nestor had informed the officers that his friend had recently manufactured methamphetamine in his garage. Mr. Nestor indicated that he had some chemicals and a "spent" pot from manufacturing methamphetamine in his garage. Officer Crockett then spoke with Mr. Nestor's wife.[1] She admitted to purchasing Sudafed for Mr. Nestor, maintaining that he would hit her if she did not purchase it. Officer Crockett explained to Mr. Nestor's wife that the officers were aware that there was a methamphetamine lab inside her house. Officer Crockett obtained verbal consent from her to search the Nestors' house. Officer Crockett did not recall talking to Mr. Nestor after talking to Mr. Nestor's wife. However, he maintained that Mr. Nestor at no time refused consent or told him that he could not search the home.

{¶9} Thereafter, Officer Crockett left CVS and went to the Nestors' residence. There, officers located a reaction vessel, muriatic acid, and Coleman fuel in the garage, and the officers located Sudafed, residue, snort straws, and a piece of cut tubing inside the house. Officer Crockett maintained that these items were evidence of methamphetamine production. Officer Crockett opined that, even had he not obtained consent from Mr. Nestor's wife to search the home, based upon the information that the officers had at the time, they would have entered the

---

[1] Officer Crockett stated that he had brought to the hearing an audio recording of his discussion with Mr. Nestor's wife. However, the audio was not played at the hearing, and does not appear to have been admitted into evidence.

Nestors' home to assure that the meth lab was not active, and to secure anyone that may have been present at the home.

{¶10} The defense presented Mr. Nestor's testimony at the suppression hearing. When Officer Cirullo stopped him at CVS, he ordered him out of the car and asked for his identification, which Mr. Nestor supplied. After waiting on the curb for some time, Mr. Nestor asked Officer Cirullo why he had pulled him over, and the officer asked him if he was aware of a warrant for his arrest. Mr. Nestor informed him that he was aware that he had a warrant due to his failure to pay a small fine, but it was a "no pickup" order. The officer responded by ordering him back to the curb. Shortly thereafter, a canine unit arrived. An officer informed Mr. Nestor that they were searching his vehicle, and Mr. Nestor heard the canine officer say something to the dog and tap on the passenger side of the car, as though coaching the dog, and the dog then jumped up on the passenger side of his car.

{¶11} Mr. Nestor maintained that the officers began "badgering" him about Sudafed and batteries found in his car, and they were alleging that his and his wife's history of buying Sudafed corresponded. Contrary to Officer Cirullo's testimony, Mr. Nestor testified that his wife did not share the surname Nestor, and the address listed on her driver's license did not correspond with the address listed on his driver's license. Mr. Nestor maintained that he had texted his Wife after officers had ordered him out of his car, and shortly thereafter, she arrived at the scene. The officers "barricaded" her and started asking her questions. Sometime after Mr. Nestor had been placed in Officer Cirullo's cruiser, Officer Crockett approached the cruiser, and the officer informed him that his Wife had told him what was at the Nestors' house. Mr. Nestor responded by explicitly refusing to permit officers to search the house. The officer replied that he had consent from his wife. At that point, Mr. Nestor told the officers some items that they

would find at the house in order to "ease the process" because the officers were going to conduct the search regardless of whether he provided consent.

{¶12} During the State's closing argument, the State maintained that case law pertaining to consent of a co-occupant indicated that, to suppress the evidence against Mr. Nestor for the items found in his home, where consent was obtained from his co-occupant wife, Mr. Nestor had to expressly refuse or revoke consent. The State maintained that Mr. Nestor had not done so pursuant to the officers' testimony. The following exchange then occurred:

THE COURT: Can't we clear that up by the audiotape?

[THE STATE]: It could, absolutely, Judge.

THE COURT: How come nobody presented the audiotape?

[THE STATE]: Presently the State doesn't have it in its possession. Apparently there's some sort of problem with downloading it. Officer Cirullo was trying to download it to an e-mail address earlier this morning.

{¶13} As part of the defense's closing argument, defense counsel maintained:

We have a situation where Mr. Nestor's at the scene and telling the officer that, "No, you can't search my home," and the wife is saying, "Yes," but yet the State says there's audio and video available.

Well, I filed a discovery motion, Your Honor. And this case started back in June and here we are on October 24th and that information still has not been provided to me, nor did they come to the suppression hearing with that. *So what the court has to base its decision on today* is a he-said she-said and in that particular instance Mr. Nestor should be given the benefit of the doubt because until he's convicted of this he remains cloaked in innocence. The officers have no more authority in spite of their training and knowledge. It's not a matter of whether or not – and I by no[] means am calling the officers liars, but I'm not also calling Mr. Nestor a liar either.

(Emphasis added.) Mr. Nestor did not move to continue the suppression proceedings so that he could review the recordings.

{¶14} In its journal entry, the trial court determined that much of Mr. Nestor's testimony was not credible, finding in part that:

[Mr. Nestor] further testified that he explicitly refused to give Officer Crockett consent to search his house, but instead told him, "F*** off, you ain't searchin' my house." He also testified that the officer asked what he would find at the house and [Mr. Nestor] then told him what evidence he would find there. The Court gives no weight to [Mr. Nestor's] strangely inconsistent testimony that he first explicitly refused to give consent to search, so as to even tell the officer to f*** off, but then also voluntarily told the officer of self-incriminating evidence that could be found at the residence.

{¶15} The trial court denied the motion to suppress, and, with respect to the search of the house, the court concluded that the search was justified based upon consent and exigent circumstances.

{¶16} On appeal, Mr. Nestor challenges only the propriety of the search of his house, specifically whether the officers obtained appropriate consent to search and whether exigent circumstances existed to justify a search without a warrant. We limit our discussion accordingly, and we address only Mr. Nestor's argument pertaining to consent, as it is dispositive of the issue of the propriety of the search of the residence.

{¶17} The Fourth Amendment to the United States Constitution and Article I, Section 14, of the Ohio Constitution prohibit law enforcement officers from conducting unreasonable and warrantless searches and seizures. Courts are required to exclude evidence obtained by means of searches and seizures that are found to violate the Fourth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 657 (1961). A warrantless search "is 'per se unreasonable * * * subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973), quoting *Katz v. United States*, 389 U.S. 347, 357 (1967). One such exception is consent. *State v. Hetrick*, 9th Dist. Lorain No. 07CA009231, 2008-Ohio-1455, ¶ 21; *State v. Price*, 134 Ohio App.3d 464, 467 (9th Dist.1999). "The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with

a co-occupant who later objects to the use of evidence so obtained." *Georgia v. Randolph*, 547 U.S. 103, 106 (2006), citing *Illinois v. Rodriguez*, 497 U.S. 177 (1990).

{¶18} Here, on appeal, in support of his contention that the officers did not have proper consent to search the residence, Mr. Nestor first maintains that his wife's consent to search the house was not voluntary. However, this argument was not contained in Mr. Nestor's motion to suppress, nor was it advanced at the suppression hearing. Instead, in the trial court, Mr. Nestor maintained that, because he was present at CVS "when his wife gave consent[,]" the officers were required to *additionally* obtain his consent to search the home pursuant to his interpretation of the United States Supreme Court's holding in *Randolph*. Accordingly, we decline to review Mr. Nestor's argument pertaining to the voluntariness of his wife's consent, as it is being raised for the first time on appeal. *See Xenia v. Wallace*, 37 Ohio St.3d 216, 218 (1988) (defendant must make clear the basis of his challenge in his motion to suppress in order to preserve the challenge for appeal), and *State v. Smith*, 9th Dist. Summit No. 21069, 2003-Ohio-1306, ¶ 11-15 (trial court may permit defendant to supplement motion to suppress at the hearing on that motion).

{¶19} Mr. Nestor further appears to argue that the officers could not search the home because he denied them consent to search. However, the trial court discounted Mr. Nestor's testimony that he explicitly refused to consent to the search. Further, although there purportedly existed audio recording of statements made by Mr. Nestor in Officer Cirullo's cruiser, and defense counsel maintained that the recording was not provided in discovery, it does not appear that defense counsel lodged an objection to the trial court determining this issue on the basis of the testimony presented, absent the recording. Instead, it appears from the portion of defense

counsel's closing argument quoted above that defense counsel advised the court that it should proceed to decide the suppression motion on the basis of the testimony presented at the hearing.

{¶20}   Moreover, it was not disputed at the hearing that Mr. Nestor's wife provided consent to search the home or that she was a co-occupant of the home.  The consent of a co-occupant to search a home generally relieves officers of the requirement to obtain a warrant, except as provided in *Randolph.  See Fernandez v. California,* 134 S.Ct. 1126, 1129 (2014) (characterizing *Randolph* as a narrow exception to the rule that officers may search a jointly occupied premises if one of the occupants consents)*.*  In *Randolph,* the United States Supreme Court held that "a physically present inhabitant's express refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant."  *Randolph,* 547 U.S. at 122-23.  In reaching this result, the Supreme Court looked to "widely shared social expectations" in assessing the reasonableness of consent to search a cohabited dwelling.  *Id.* at 111.  The  Court concluded that  "it is fair to say that a caller *standing at the door of shared* premises would have no confidence that one occupant's invitation was a sufficiently  good reason to enter when a fellow tenant *stood there saying, 'stay out.'*" (Emphasis added.)  *Id.* at 113.  The Supreme Court acknowledged that it was "drawing a fine line; if a potential defendant with self-interest in objecting is in fact *at the door* and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part *in the threshold colloquy*, loses out." (Emphasis added.)  *Id.* at 121.  However, this case differs from *Randoph* in that, here, although Mr. Nestor and his wife were both present *at the location of a stop*, in *Randolph*, the co-occupants were present *at the residence* that was to be searched. *Randolph* at 107.  Further, here, the trial court did not find credible Mr. Nestor's testimony that he refused the search, whereas, in *Randolph*, the facts as recited by the Court included that the

defendant "unequivocally refused" permission for officers to search the house. *Id.* It is unclear in Mr. Nestor's brief whether he is attempting to rely on the *Randolph* exception. However, to the extent that Mr. Nestor is relying on *Randolph*, he has not developed an argument as to why it should apply to the facts of this case, and we decline to construct on argument on his behalf. *See* App.R. 16(A)(7).

{¶21} Accordingly, we cannot say that the trial court erred in concluding that the search of the Nestors' house was justified on the basis of consent. Therefore, we need not address whether there existed exigent circumstances which would have also provided justification for the search.

### III.

{¶22} Mr. Nestor's assignment of error is overruled. The judgment of the trial court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

WHITMORE, P. J.
CELEBREZZE, J.
CONCUR.

(Celebrezze, J., of the Eighth District Court of Appeals, sitting by assignment.)

APPEARANCES:

KRISTEN KOWALSKI, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.