[Cite as *State v. Lee*, 2020-Ohio-4970.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

JESSICA LEA LEE

    Appellant

C.A. No.      29597

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.      CR 18 05 1747

DECISION AND JOURNAL ENTRY

Dated: October 21, 2020

TEODOSIO, Judge.

{¶1} Defendant-Appellant, Jessica Lee, appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} Ohio State Highway Patrol Trooper John Gray was patrolling the Akron area on midnight shift when he spotted a white Cadillac de Ville. The car captured his attention because the driver was braking sporadically, despite traveling at a slow speed and having a clear lane of travel. As the trooper approached the car, it continued to brake sporadically, and he noticed that its rear license plate was not illuminated. He then executed a traffic stop.

{¶3} Ms. Lee was the driver of the car that Trooper Gray stopped. When the trooper approached her window, he detected a mild odor of alcohol and noted that her passenger was "really fidgety and wouldn't stop moving." The trooper also noted that Ms. Lee was sweating profusely, despite the mild temperature, and had bloodshot and glossy eyes. Believing that Ms.

Lee might be impaired, the trooper detained her and performed field sobriety testing. After he administered the tests, he arrested Ms. Lee.

{¶4} Ms. Lee was indicted on charges of aggravated possession of fentanyl, possession of heroin, and operating a vehicle while under the influence of drugs or alcohol ("OVI"). She filed a motion to suppress, and the trial court held a hearing on her motion. Following the hearing, the court denied her motion, and Ms. Lee pleaded no contest to each of her charges. The court sentenced her to a total of one year of non-reporting community control.

{¶5} Ms. Lee now appeals from the trial court's judgment and raises four assignments of error for our review. Because several of her assignments of error are interrelated, we consolidate them for purposes of our analysis and decision.

II.

## ASSIGNMENT OF ERROR I

THE COURT ERRED IN DENYING DEFENDANT LEE'S MOTION TO SUPPRESS IN THAT THE STATE FAILED TO DEMONSTRATE PROBABLE CAUSE FOR THE STOP OF [MS. LEE'S] VEHICLE.

## ASSIGNMENT OF ERROR III

THE STOP IS PRETEXTUAL AND THE CONTINUED DETENTION OF JESSICA LEE AS A PERSON STOPPED FOR A VEHICLE VIOLATION WAS IMPROPER AS IT WAS NOT RELATED TO THE ORIGINAL PURPOSE OF THE STOP AND THERE ARE NO ADDITIONAL FACTS CREATING REASONABLE SUSPICION OF SEPARATE ILLEGAL ACTIVITY SUCH AS OVI.

{¶6} In her first and third assignments of error, Ms. Lee argues that the trial court erred when it denied her motion to suppress. According to Ms. Lee, neither her stop, nor her continued detention was supported by probable cause. For the following reasons, we reject her arguments.

{¶7} A motion to suppress presents a mixed question of law and fact:

When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Internal citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶8} "[A]n investigative stop of a motorist does not violate the Fourth Amendment if the officer has a reasonable suspicion that the individual is engaged in criminal activity." *State v. Campbell*, 9th Dist. Medina No. 05CA0032-M, 2005-Ohio-4361, ¶ 10. "Reasonable suspicion is something less than probable cause * * *." *State v. Carey*, 9th Dist. Summit No. 28689, 2018-Ohio-831, ¶ 10. "To justify an investigative stop, an officer must point to 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *State v. Kordich*, 9th Dist. Medina No. 15CA0058-M, 2017-Ohio-234, ¶ 7, quoting *Maumee v. Weisner*, 87 Ohio St.3d 295, 299 (1999), quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968). "[W]here an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid * * *." *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12 (1996). *Accord Kordich* at ¶ 7, quoting *State v. Slates*, 9th Dist. Summit No. 25019, 2011-Ohio-295, ¶ 23 ("This Court has repeatedly recognized that '[a]n officer may stop a vehicle to investigate a suspected violation of a traffic law.'").

{¶9} In general, "[a]n investigative stop may last no longer than necessary to accomplish the initial goal of the stop." *State v. Rackow*, 9th Dist. Wayne No. 06CA0066, 2008-Ohio-507, ¶ 8. *Accord Rodriguez v. United States*, 575 U.S. 348, 354 (2015). If, however, during the investigatory stop "the officer discovers additional facts from which it is reasonable to infer additional criminal activity[,] the officer is permitted to lengthen the duration of the stop to

investigate such suspicions." *State v. Williams*, 9th Dist. Lorain No. 09CA009679, 2010-Ohio-3667, ¶ 15. *Accord State v. Robinette*, 80 Ohio St.3d 234, 241 (1997). The question is whether, under the totality of the circumstances, the officer possessed reasonable suspicion to extend the detention. *See State v. Ross*, 9th Dist. Lorain No. 12CA010196, 2012-Ohio-6111, ¶ 8. "A totality of the circumstances review includes consideration of '(1) [the] location; (2) the officer's experience, training or knowledge; (3) the suspect's conduct or appearance; and (4) the surrounding circumstances.'" *Kordich* at ¶ 7, quoting *State v. Biehl*, 9th Dist. Summit No. 22054, 2004-Ohio-6532, ¶ 14.

{¶10} In ruling on Ms. Lee's motion to suppress, the trial court made each of the following factual findings. Trooper Gray spotted Ms. Lee driving her car at a slow rate of speed and braking sporadically, even though there was no car in front of her. As he followed her car, he noticed that her rear license plate was not illuminated and executed a traffic stop. Both Ms. Lee's sporadic driving and the late hour caused the trooper to be concerned that he might be dealing with an impaired driver.

{¶11} Once Trooper Gray approached Ms. Lee's car, he observed that she had bloodshot eyes, smelled slightly of alcohol, was fidgeting, and was sweating profusely. His observations led him to believe that Ms. Lee was impaired, so he asked her to step out of her car. The trooper then conducted field sobriety testing and arrested Ms. Lee.

{¶12} The trial court found that Trooper Gray had probable cause to stop Ms. Lee's car for a violation of R.C. 4513.05 (requiring a car's rear license plate be illuminated). The court noted that there was some dispute as to whether her car's rear license plate lights were functioning. Specifically, defense counsel claimed that the dashcam recording refuted the trooper's claim that the lights were out. The court determined, however, that Trooper Gray had provided credible

testimony on that issue.  In reaching that determination, the court noted that it had reviewed the dashcam recording and found that various portions supported the trooper's testimony.  Because the trooper observed a minor traffic infraction, the court rejected Ms. Lee's argument that he lacked probable cause to stop her car.

{¶13}  The trial court also determined that Trooper Gray acted upon reasonable suspicion when he continued to detain Ms. Lee.  The court noted that the stop occurred at a late hour, and the trooper saw Ms. Lee driving in an odd fashion.  In particular, he observed her driving at a slow speed and sporadically braking "even though no car was in front of [her]."  The trooper also observed that Ms. Lee had bloodshot eyes, smelled slightly of alcohol, was fidgeting, and was sweating profusely.  Based on the totality of the circumstances that the trooper observed, the court determined that he acted appropriately when he continued to detain Ms. Lee.  Thus, it rejected Ms. Lee's argument that her prolonged detention was unlawful.

The Stop of Ms. Lee's Car

{¶14}  Ms. Lee argues that the trial court erred when it determined that Trooper Gray had probable cause to stop her car.  She maintains that the trooper offered incompetent testimony when he claimed her rear license plate lights were not functioning.  According to Ms. Lee, the trooper's dashcam recording showed that she had a functioning rear license plate light and that her plate was visible from a distance of 50 feet.  She claims that the trooper used her lights as a pretext to stop her car.  She also claims, for the first time on appeal, that a properly functioning red tail light can serve as a rear license plate light under R.C. 4513.05.

{¶15}  To the extent Ms. Lee argues that a red tail light may serve as a rear license plate light, she did not raise that argument in the lower court.  This Court will not address arguments for the first time on appeal.  *See State v. Robinson*, 9th Dist. Summit No. 28488, 2017-Ohio-7380, ¶

12. To preserve a suppression challenge for appeal, a defendant must "develop [her] argument in [her] motion to suppress or at the [suppression] hearing." *State v. Keagle*, 9th Dist. Summit No. 29045, 2019-Ohio-3975, ¶ 12. Because Ms. Lee did not preserve her argument in the lower court, she is precluded from raising it on appeal. *See id.*, citing *State v. Nestor*, 9th Dist. Summit No. 27800, 2016-Ohio-1333, ¶ 18.

{¶16} Upon review, the record contains competent, credible evidence in support of the trial court's finding that Ms. Lee's rear license plate lights were not functioning. *See Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. Trooper Gray testified that Cadillac de Villes generally have two rear license plate lights that are "very easy to see" when properly illuminated. He testified that Ms. Lee's lights "were definitely both out." He acknowledged that, at various points in the dashcam recording of the stop, his cruiser's lights made it appear that her rear license plate was illuminated. Nevertheless, he confirmed that the perceived illumination was just a reflection and it was "clearly evident" in person that the lights were not functioning. Apart from viewing the dashcam recording, the trial court had the benefit of observing Trooper Gray and hearing him testify at the suppression hearing. The court, as the trier of fact, was in the best position to evaluate his credibility and resolve the matter of whether Ms. Lee's rear license plate lights were functioning. *See id.* Because the record supports the court's finding that the lights were out, we accept that finding as true and apply the law to that finding. *See id.*

{¶17} As previously noted, any criminal violation, including a minor traffic violation, can justify a traffic stop. *See Erickson*, 76 Ohio St.3d at 11-12. That rule of law holds true "even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." *Id.* at syllabus. R.C. 4513.05(A) requires a light to be constructed and placed on a vehicle so "as to illuminate with a white light the rear registration

plate * * * and render it legible from a distance of fifty feet to the rear." Because Ms. Lee did not have a functioning rear license plate light, Trooper Gray was justified in stopping her car. *See State v. Reese*, 9th Dist. Medina No. 02CA0088-M, 2003-Ohio-2638, ¶ 10-11; *State v. Gibson*, 9th Dist. Lorain No. 97CA006967, 1999 WL 459330, *2-3 (July 7, 1999). Ms. Lee's argument to the contrary lacks merit.

Ms. Lee's Continued Detention

{¶18}  Next, Ms. Lee claims that Trooper Gray violated her constitutional rights when he extended her detention beyond the point of addressing her rear license plate light. She argues that there was no evidence that she fidgeted during the traffic stop. Moreover, she argues that fidgeting, sweating, and sporadic braking do not give rise to probable cause to detain a motorist.

{¶19}  To the extent the trial court found that Ms. Lee was fidgeting during the traffic stop, the record does not contain competent, credible evidence of that fact. *See Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. Trooper Gray testified that Ms. Lee's passenger was fidgeting, not Ms. Lee. He stated that, taken in context with Ms. Lee's behavior, the passenger's fidgeting aroused his suspicions. Because the record does not support the court's finding that Ms. Lee was fidgeting, we will not consider that finding in our analysis. *See id.*

{¶20}  The record reflects that the trial court's remaining findings are based on competent, credible evidence. *See id.* Trooper Gray testified that he spotted Ms. Lee's car at 12:38 a.m. He testified that the car drew his attention because it was traveling slowly, the driver was braking sporadically with a clear lane of travel, and the car's rear license plate lights were out. Though he stopped the car for the license plate violation, the trooper's experience informed him that the late hour and the driving behavior he observed were signs that he might be dealing with an impaired driver. He testified that he detected a mild odor of alcohol when he approached Ms. Lee and her

eyes were bloodshot and glossy. He also testified that she "was just sweating profusely and crazy" even though "the weather wasn't that hot or anything * **." Based on the totality of his observations, Trooper Gray testified, he detained Ms. Lee to conduct his additional investigation. Because his testimony serves as competent, credible evidence in support of the trial court's remaining findings, we accept those findings as true and apply the law to those findings. *See id.*

{¶21} To continue to detain Ms. Lee, Trooper Gray need only have possessed reasonable suspicion that she was engaged in criminal activity. *See Ross*, 2012-Ohio-611, at ¶ 8. The totality of the circumstances supports the trial court's conclusion that her continued detention was lawful. *See id.* Ms. Lee was stopped at a late hour, exhibited odd driving behavior, had bloodshot and glossy eyes, and was sweating profusely in mild weather. *See Kordich*, 2017-Ohio-234, at ¶ 7, quoting *Biehl*, 2004-Ohio-6532, at ¶ 14 (suspect's conduct, appearance, and the surrounding circumstances are to be considered in assessing the totality of the circumstances). Even if those circumstances were insufficient to generate probable cause, "[r]easonable suspicion is something less than probable cause * * *." *Carey*, 2018-Ohio-831, at ¶ 10. It merely requires that an officer "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion [at hand]." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Trooper Gray's observations, in conjunction with his training and experience, provided him with reasonable suspicion to extend Ms. Lee's detention. Accordingly, Ms. Lee's first and third assignments of error are overruled.

## ASSIGNMENT OF ERROR II

THE COURT ERRED IN FINDING THAT THERE ARE SUFFICIENT FACTS TO INDEPENDENTLY SUPPORT A REASONABLE SUSPICION THAT THE DEFENDANT APPELLANT WAS INTOXICATED FOR WHICH FIELD SOBRIETY TESTS WERE PERMITTED.

{¶22} In her second assignment of error, Ms. Lee argues that the trial court erred when it found that Trooper Gray had reasonable suspicion to conduct field sobriety testing. We do not agree.

{¶23} Before turning to Ms. Lee's argument, we note that she failed to make clear the grounds upon which her suppression challenge rested when presenting her argument in the trial court. *See Xenia v. Wallace*, 37 Ohio St.3d 216, 218 (1988). Her written motion only contested the basis for her traffic stop, and, at the start of the suppression hearing, her counsel informed the court that she was "not challenging the field sobrieties or really anything that happen[ed] after [she was] removed from the car." During closing argument, however, her counsel included an argument that Trooper Gray "[lacked] probable cause * * * to perform field sobrieties." The trial court appears to have responded to that argument, as it found that the trooper acted appropriately when he asked Ms. Lee to perform field sobriety testing. Because the trial court addressed that issue, this Court will consider it on appeal. *See generally State v. Smith*, 9th Dist. Summit No. 21069, 2003-Ohio-1306, ¶ 11-15 (trial court may permit defendant to supplement motion to suppress at the hearing on that motion). Even so, this Court will not address any arguments directed at the actual administration of the tests. *See Keagle*, 2019-Ohio-3975, at ¶ 12.

{¶24} We have already outlined our standard of review in appeals from rulings on a motion to suppress. We, therefore, incorporate that standard from our discussion of Ms. Lee's first and third assignments of error. *See Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. Likewise, we incorporate each of the trial court's factual findings, to the extent we have already determined that they are supported by competent, credible evidence. *See* Discussion, *supra*.

{¶25} "[A] police officer does not need probable cause to conduct a field sobriety test; rather, he must simply have a reasonable suspicion of criminal activity." *State v. Slates*, 9th Dist.

Summit No. 25019, 2011-Ohio-295, ¶ 24. "Reasonable suspicion is based on the totality of the circumstances." *State v. Hochstetler*, 9th Dist. Wayne No. 16AP0013, 2016-Ohio-8389, ¶ 10. It "'exists if an officer can point to specific and articulable facts indicating that [an individual] may be committing a criminal act.'" *State v. Osburn*, 9th Dist. Wayne No. 07CA0054, 2008-Ohio-3051, ¶ 9, quoting *Wadsworth v. Engler*, 9th Dist. Medina No. 2844-M, *3 (Dec. 15, 1999). "[N]o single factor is dispositive of whether a law enforcement officer is legally justified in conducting field sobriety tests in any given case.'" *State v. Hetzel*, 9th Dist. Summit No. 29399, 2020-Ohio-3437, ¶ 8, quoting *Hochstetler*, 2016-Ohio-8389, at ¶ 12.

{¶26} Ms. Lee argues that the trial court erred when it determined that Trooper Gray had reasonable suspicion to conduct field sobriety testing. She notes that it is not against the law to drive slowly or brake sporadically. According to Ms. Lee, the dashcam recording showed that she acted appropriately during the stop, spoke clearly, and was "steady as a rock" while she performed the field sobriety tests. She notes that there was no testimony regarding her having failed any of the tests. Further, she argues, having bloodshot eyes at midnight is not unreasonable. She claims that Trooper Gray possessed insufficient evidence that she was impaired before he subjected her to field sobriety testing.

{¶27} Upon review, we cannot conclude that the trial court erred when it determined that Trooper Gray had reasonable suspicion to conduct field sobriety testing. *See Slates*, 2011-Ohio-295, at ¶ 24. It was past midnight when he stopped Ms. Lee, and she was exhibiting odd driving behavior. Specifically, she was traveling at a notably slow rate of speed and braking sporadically even though there was no car in front of her. The trooper observed that she had bloodshot and glossy eyes. He also detected an odor of alcohol on his approach and observed that she was sweating profusely, in spite of the mild weather. While having bloodshot eyes at midnight might

not be unreasonable, "no single factor is dispositive" in a review of the totality of the circumstances. *Hochstetler* at ¶ 12. Likewise, any evidence regarding how Ms. Lee performed on the field sobriety tests is not relevant to a determination of whether, at the outset, Trooper Gray had reasonable suspicion to conduct the tests. Based on the totality of the circumstances before him at the time, the trooper had reasonable suspicion to detain Ms. Lee for the purpose of conducting field sobriety testing. *See Hetzel* at ¶ 11. As such, her second assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

JESSICA LEE WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 10, OF THE OHIO CONSTITUTION IN THAT COUNSEL FAILED TO ARGUE THE STATUTE IN ASSIGNMENT NO. 1 AND FAILED TO ARGUE THE FIELD SOBRIETY TESTS.

{¶28} In her fourth assignment of error, Ms. Lee argues that she received ineffective assistance of trial counsel. Upon review, we reject her argument.

{¶29} "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 62. To prove ineffective assistance of counsel, one must establish that: (1) her counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient if it falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. "If a defendant pleads no contest to an offense, in order to demonstrate prejudice of [her] counsel's representation, [she] must show that there is a reasonable probability that, but for counsel's errors, [she] would not have pleaded no contest and would have insisted on going to trial." *State v. Bramos*, 9th Dist. Medina No. 19CA0061-M, 2020-Ohio-1169, ¶ 16.

{¶30} Ms. Lee advances several arguments in support of her claim that she received ineffective assistance of counsel. First, she takes issue with her counsel's failure to argue that a tail light can serve as a rear license plate light under R.C. 4513.05. Second, she faults her counsel for not highlighting or introducing evidence that would have shown that her rear license plate was, in fact, illuminated. She notes that her counsel agreed the court could watch the dashcam recording on its own. By not playing the video during the suppression hearing, Ms. Lee argues, her counsel missed the opportunity to draw the court's attention to segments that supported her position. Likewise, she argues that her counsel missed an opportunity when he did not have her testify and did not call an expert to provide testimony about "the difficulty of discerning the lighting" from a recording. Finally, she argues that her counsel was ineffective because he did not rely on her performance on the field sobriety tests as evidence that she was not intoxicated.

{¶31} Attorneys "'may limit the number of arguments raised in order to focus on those issues most likely to bear fruit.'" *State v. Bray*, 9th Dist. Lorain No. 03CA008241, 2004-Ohio-1067, ¶ 18, quoting *State v. Caulley*, 10th Dist. Franklin No. 97AP-1590, 2002-Ohio-7039, ¶ 4. Moreover, "debatable trial tactics do not give rise to a claim for ineffective assistance of counsel." *State v. Bray*, 9th Dist. Lorain No. 03CA008241, 2004-Ohio-1067, ¶ 18. To the extent Ms. Lee's counsel did not argue that a red tail light may suffice as a rear license plate light, her counsel may well have determined that argument was unlikely to succeed. *See* R.C. 4513.05(A) (requiring illumination of a rear license plate "with a white light"). Counsel also may well have determined, as a matter of strategy, not to call Ms. Lee or an expert to testify at the suppression hearing. *See State v. Berila*, 9th Dist. Medina No. 19CA0007-M, 2020-Ohio-3523, ¶ 38; *State v. Roy*, 9th Dist. Lorain No. 19CA011473, 2020-Ohio-3536, ¶ 24.

{¶32} Although counsel did not specifically highlight segments of the dashcam recording or Ms. Lee's performance on the field sobriety tests at the suppression hearing, Ms. Lee has not demonstrated resulting prejudice. *See Strickland*, 466 U.S. at 687. The trial court provided pinpoint citations for numerous portions of the recording in its decision, found that the recording supported the trooper's testimony, and found him to be a credible witness. Ms. Lee has not shown that the court's viewing of that same video, at the suppression hearing, would have caused it to reach a different conclusion. Moreover, she has made no attempt to explain how her counsel's performance at the suppression hearing "had any bearing on [her] decision to plead no contest * * *." *Bramos*, 2020-Ohio-1169, at ¶ 16. As noted, to demonstrate prejudice from counsel's representation in the context of a no contest plea, an appellant must show that "there is a reasonable probability that, but for counsel's errors, [she] would not have pleaded no contest and would have insisted on going to trial." *Id.* Ms. Lee has not addressed her ultimate decision to plead no contest, so she has not satisfied her burden of demonstrating ineffective assistance of counsel. Accordingly, her fourth assignment of error is overruled.

III.

{¶33} Ms. Lee's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

CALLAHAN, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

RICHARD P. KUTUCHIEF, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.