[Cite as *State v. Gibbs*, 2023-Ohio-4223.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No.    30548 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| WILLIAM GIBBS | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No.    CR 21 06 1972 |

DECISION AND JOURNAL ENTRY

Dated: November 22, 2023

STEVENSON, Judge.

{¶1}    Appellant, William Gibbs, appeals from the judgment of the Summit County Court of Common Pleas denying his motion to suppress.  We affirm as the trooper lawfully observed an ammunition cartridge in plain view and then, for the safety of others and officer safety, conducted a further search of Mr. Gibbs' vehicle after he gave uncoerced statements that he had a firearm in his truck.

I.

{¶2}    On May 9, 2021, Ohio State Highway Patrol ("OSHP") Trooper Jason Fowler was parked in the median on I-77 when he observed an F250 pickup truck, later determined to be driven by Mr. Gibbs, traveling 78 mph in a 65-mph zone. Trooper Fowler testified that the truck almost struck another vehicle and that he observed the truck commit two marked lane violations.  Trooper Fowler initiated a traffic stop after observing the two marked lane violations.  The validity of the traffic stop is not at issue on appeal.

{¶3} The traffic stop occurred at night on I-77. It was dark and the area was not well lit. For safety reasons, Trooper Fowler patted-down Mr. Gibbs and placed him in the back of the cruiser. Once inside the cruiser, Trooper Fowler immediately read Mr. Gibbs his *Miranda* rights. Trooper Fowler described Mr. Gibbs' initial demeanor as "normal."

{¶4} OSHP Trooper Adam Knowles was the secondary officer on the scene as he arrived after Trooper Fowler initiated the traffic stop. Trooper Knowles' assistance included watching traffic, so he "could call out if we were going [to] get hit or not[,]" and walking around looking inside the truck. When looking inside the truck's windows with a flashlight, Trooper Knowles "saw a loose nine millimeter cartridge on the floor." Trooper Knowles testified that the ammunition cartridge was on the passenger's side floor.

{¶5} It is Mr. Gibbs' position that his constitutional rights were violated when Trooper Knowles leaned through the truck's open windows when looking inside. Trooper Knowles testified that he neither entered nor leaned through the truck's windows when looking inside the vehicle.

{¶6} After learning that Trooper Knowles observed a loose ammunition cartridge on the truck's floor, and after advising Mr. Gibbs of his *Miranda* rights, Trooper Fowler asked Mr. Gibbs if there was a firearm inside the truck. According to Trooper Fowler, Mr. Gibbs became "more nervous" as he talked about going "into the vehicle to do a protective sweep for the gun." Trooper Fowler was going to conduct a protective sweep for the officers' safety as well as the safety of the community. Trooper Fowler also questioned Mr. Gibbs about a digital scale seen inside the truck.

{¶7} Upon further questioning, Mr. Gibbs disclosed to Trooper Fowler that he had an unloaded firearm in the side water-bottle holder of his backpack. The backpack was located on the front passenger seat of the truck. Trooper Fowler testified that he did not believe the firearm

was unloaded considering the loose ammunition cartridge found on the floor, Mr. Gibbs' change in demeanor, and Mr. Gibbs changing his story that "he didn't have a gun, then he said he did[.]"

{¶8} Trooper Fowler located a loaded firearm in the backpack. Drugs were also found in the truck. At the suppression hearing, neither Mr. Gibbs nor the State presented testimony as to the continued search of the truck and the discovery of the drugs.

{¶9} Mr. Gibbs was charged with aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2)(C)(1)(f), a felony of the first degree with a major drug offender specification; aggravated possession of drugs in violation of R.C. 2925.11(A)(C)(1)(e), a felony of the first degree with a major drug offender specification; trafficking in a fentanyl-related compound in violation of R.C. 2925.03(A)(2)(C)(9)(h), a felony of the first degree; possession of a fentanyl-related compound in violation of R.C. 2925.11(A)(C)(11)(g), a felony of the first degree; trafficking in cocaine in violation of R.C. 2925.03(A)(2)(C)(4)(f), a felony of the first degree, possession of cocaine in violation of R.C. 2925.11(A)(C)(4)(e), a felony of the first degree; improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B)(I), a felony of the fourth degree with criminal forfeiture specifications; and receiving stolen property in violation of R.C. 2913.51(A)(C), a felony of the fourth degree. The State subsequently dismissed the major drug offender specification.

{¶10} Mr. Gibbs filed a motion to suppress all statements and evidence from the May 9, 2021 traffic stop. After an oral hearing was held, the trial court denied Mr. Gibbs' motion to suppress. Mr. Gibbs then pleaded no contest to the charges.

{¶11} The trial court found Mr. Gibbs guilty of all charges and sentenced him according to law. This appeal followed. Mr. Gibbs appeals the trial court's judgment denying his motion to suppress, asserting two assignments of error for review.

II.

## ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ERRED IN DENYING MR. GIBBS' MOTION TO SUPPRESS, THEREBY VIOLATING HIS RIGHT TO BE SECURE FROM AN UNREASONABLE SEARCH AND SEIZURE UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION.**

{¶12} Mr. Gibbs argues in his first assignment of error that, in denying his motion to suppress, the trial court violated his right to be secure from an unreasonable search and seizure under the Fourth and Fourteenth Amendments to the United States Constitution, and Article I, Section 14 of the Ohio Constitution. We disagree.

{¶13} The Ohio Supreme Court has stated:

> Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. Pursuant to *Burnside*, "[o]nce this Court has determined that the trial court's factual findings are supported by the evidence, we consider the trial court's legal conclusions de novo." *State v. Iloba*, 9th Dist. Wayne No. 20AP0030, 2021-Ohio-3700, ¶ 7, citing *Burnside* at ¶ 8.

{¶14} In denying Mr. Gibbs' motion to suppress, the trial court concluded that Trooper Knowles acted reasonably by walking around the truck and looking inside. The trial court found that the totality of the circumstances did not support a constitutional violation and that Trooper Knowles did not manipulate the window or alter anything in the truck when he looked into the

vehicle. The trial court's decision was based on the troopers' testimony at the suppression hearing and the dash and cruiser cam videos from Trooper Fowlers' cruiser, admitted as Exhibit 1 at the suppression hearing. In assessing the credibility of the witnesses, the trial court found that Trooper Knowles' testimony was credible and it accepted Trooper Knowles' version of the facts. The trial court was in the best place to evaluate the trooper's credibility. *See State v. Lee*, 9th Dist. Summit No. 29597, 2020-Ohio-4970, ¶ 16. "This Court will not second-guess the trial court regarding matters of witness credibility." *State v. Gaines*, 9th Dist. Lorain No. 00CA008298, 2004-Ohio-3407, ¶ 35, citing *State v. Hopfer*, 112 Ohio App.3d 521, 548 (2d Dist.1996).

{¶15} Accepting the trial court's findings of fact as true, this Court must independently consider "whether the facts satisfy the applicable legal standard." *Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. This Court must independently consider whether Mr. Gibbs' rights under the Fourth and Fourteenth Amendments to the United States Constitution, and Article I, Section 14 of the Ohio Constitution, were violated.

{¶16} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, prohibits unreasonable searches and seizures. *Accord* Ohio Constitution, Article I, Section 14. Both generally require a warrant or probable cause plus exigent circumstances before conducting a search. *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002). "[A] search conducted without a warrant issued upon probable cause is 'per se unreasonable * * * subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973), quoting *Katz v. United States*, 389 U.S. 347, 357 (1967). The State bears the burden of establishing that one of the exceptions applies. *State v. Kessler*, 53 Ohio St.2d 204, 207 (1978).

## Plain View Exception

{¶17} One exception to the warrant requirement is the plain view exception. *State v. Williams*, 55 Ohio St.2d 82, 84 (1978). The plain view exception "is grounded on the proposition that once police are lawfully in a position to observe an item first-hand, its owner's privacy interest in that item is lost * * *." *Illinois v. Andreas*, 463 U.S. 765, 771 (1983). Evidence may be seized under the plain view exception if it is shown that the police are lawfully in a position to observe the item firsthand; the police inadvertently discovered the object; and, if it was immediately apparent that the item was incriminating. *State v. Halczyszak*, 25 Ohio St.3d 301, 303 (1996).

{¶18} The validity of the traffic stop is not at issue in this appeal. Additionally, no arguments have been raised as to whether the troopers inadvertently discovered the incriminating evidence or whether it was immediately apparent that the item was incriminating. Rather, at issue on appeal is whether Trooper Knowles crossed the threshold of the truck's open windows when looking inside the vehicle. It is undisputed that, provided Trooper Knowles did not cross the threshold of the truck's windows, he could lawfully walk around the vehicle and look inside.

{¶19} Upon review, this Court concludes that the trial court's findings of fact are supported by competent, credible evidence. *See Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. Trooper Knowles testified at the suppression hearing that he did not enter or lean into the passenger or driver's side windows of the truck. Trooper Knowles testified:

A.    I did a plain view search of the vehicle. * * *

* * *

A.    I walked around the vehicle and looked inside the window.

Q.    Were you able to see anything?

A.    I was.

Q.      What did you see?

A.      I saw a loose nine millimeter cartridge on the floor.

* * *

Q.      Did you enter the vehicle during that search?

A.      No.

* * *

Q.      At any time did you lean through that window of the vehicle?

A.      No.

Q.      You did not?

A.      No.

When asked whether Trooper Knowles broke the barrier and entered the truck's windows, Trooper Fowler testified "I didn't see him do that. I did not see that."

{¶20}   The trial court found that the dash cam video "does not conclusively support either party's version of the facts." The court found that it is unclear from the video whether Trooper Knowles exceeds the threshold of the truck's window or whether Trooper Knowles merely leans over the windshield and looks through the windshield into the vehicle. "Without clear evidence to the contrary," the trial court found "that Trooper Knowles' testimony that he did not enter the vehicle during the search was credible and [it accepted] Trooper Knowles' version of the facts."

{¶21}   As previously noted, the plain view exception is one exception to the warrant requirement. *Williams*, 55 Ohio St.2d at 84. At issue in this appeal is whether Trooper Knowles lawfully observed the ammunition cartridge. If Trooper Knowles was lawfully able to observe the ammunition cartridge firsthand, the plain view exception applies.

{¶22} Trooper Knowles testified that he did not lean into or enter the truck's windows when looking inside. Trooper Fowler testified that he did not see Trooper Knowles lean into or enter the truck's windows when looking in the vehicle. The trial court found the troopers' testimony credible. The trial court also found, because it is unclear in the video if Trooper Knowles crossed the threshold of the window or whether Trooper Knowles was leaning over the windshield to look through the windshield and into the vehicle, that the dash cam video did not support either party.

{¶23} Accepting the trial court's findings as true, and applying the law to the facts, we conclude that Trooper Knowles lawfully observed the ammunition cartridge and the plain view exception applies.

### Concern for the Safety of the Officers or Others Exception

{¶24} Mr. Gibbs further argues in his first assignment of error that, once the ammunition cartridge was found, his constitutional rights were violated when he was asked whether a firearm was inside the vehicle and the troopers conducted a search for the firearm. We disagree.

{¶25} Another exception to the warrant requirement is when an officer has a concern for the safety of the officer or others. In *Terry v. Ohio*, 392 U.S. 1 (1968), the United States Supreme Court held that a police officer may conduct a brief, warrantless search of an individual's person for weapons if the officer has a reasonable and articulable suspicion that the "individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others[.]" *Id.* at 24. The court extended its precedent in *Terry* to protective searches of automobiles in *Michigan v. Long*, 463 U.S. 1032 (1983), holding that;

> the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the

officers in believing that the suspect is dangerous and the suspect may gain immediate control of the weapons.

*Id.* at 1049, citing *Terry* at 21. The *Long* court further stated that "protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may raise from the possible presence of weapons in the area surrounding the suspect." *Id.* at 1049.

{¶26} In determining whether a protective search is justified, courts apply an objective standard to determine if the "facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief that the action taken was appropriate[.]'" *State v. Bobo*, 37 Ohio St.3d 177, 178-179 (1988), quoting *Terry* at 21-22. Applying this objective standard, courts review the totality of the circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews*, 57 Ohio St.3d 86, 87-88 (1991), citing *United States v. Hall*, 525 F.2d 857, 859 (D.C.Cir.1976).

{¶27} Trooper Fowler testified that Mr. Gibbs became "extremely nervous" when Trooper Knowles was looking in the truck windows. According to Trooper Fowler, Mr. Gibbs "wasn't like that when I first talked to him and I had him out of the car. Once he seen Trooper Knowles, he did become nervous." Mr. Gibbs previously told Trooper Fowler that he did not have a CCW. In light of Mr. Gibbs' change in demeanor and the discovery of the ammunition cartridge, Trooper Fowler became concerned that there was a firearm in the truck. Trooper Fowler "wasn't confident that [Mr. Gibbs] didn't have a gun in the vehicle, so [he] wanted to make sure before [he] let him go." Trooper Fowler testified that "[i]f they're not supposed to be carrying a gun and he goes down the road and shoots somebody, then it comes back to me." Trooper Fowler further testified that he was concerned for officer safety and the concern that "[i]f they have a gun and pull it out on us and shoot us."

{¶28} Once the ammunition cartridge was found in plain view, and based on his experience and interaction with Mr. Gibbs, Trooper Fowler testified that he had safety concerns. In light of Trooper Fowlers' safety concerns, he questioned Mr. Gibbs about whether a firearm was inside the truck. The record establishes that Trooper Fowler advised Mr. Gibbs of his *Miranda* rights as soon as Mr. Gibbs was placed in the back of the police cruiser. Mr. Gibbs subsequently told Trooper Fowler, after being advised of his *Miranda* rights, that there was a firearm in the side water bottle holder of his backpack. Based on the totality of the circumstances, "through the eyes of the reasonable and prudent police officer", we conclude that the trooper had a valid safety concern. *Andrews* at 87-88. In light of the trooper's safety concern, there was no violation of Mr. Gibbs' constitutional rights when he was asked whether a firearm was inside the truck and the trooper conducted a search for the firearm.

## Search of the Truck *After* the Discovery of the Firearm

{¶29} Mr. Gibbs lastly argues in his first assignment of error that his constitutional rights were violated when a full warrantless search of his truck occurred after the discovery of the firearm. This argument was not developed in Mr. Gibbs' motion to suppress or at the suppression hearing. The parties did not address or argue this issue at the suppression hearing and the trial court's ruling did not address a continued search of the truck and the discovery of the drugs. "This Court will not address arguments for the first time on appeal." *State v. Lee*, 9th Dist. Summit No. 29597, 2020-Ohio-4970, ¶ 15, citing *State v. Robinson*, 9th Dist. Summit No. 28488, 2017-Ohio-7380, ¶ 12. To preserve a suppression challenge for appeal, a defendant must "develop [his] argument in his motion to suppress or at the [suppression] hearing." *State v. Keagle*, 9th Dist. Summit No. 29045, 2019-Ohio-3975, ¶ 12. Because Mr. Gibbs did not preserve this argument in

the lower court, he is precluded from raising it on appeal. *See id.,* citing *State v. Nestor*, 9th Dist. Summit No. 27800, 2016-Ohio-1333, ¶ 18.

{¶30} Based on our review of the record, the trial court properly denied Mr. Gibbs' motion to suppress. Mr. Gibbs' first assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT ERRED IN DENYING MR. GIBBS' MOTION TO SUPPRESS, THEREBY VIOLATING HIS RIGHTS AGAINST SELF-INCRIMINATION UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.**

{¶31} Mr. Gibbs argues in his second assignment of error that, in denying his motion to suppress, the trial court violated his rights against self-incrimination under the United States and Ohio Constitutions. We disagree.

{¶32} The Fifth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, provides that no person "shall be compelled in any criminal case to be a witness against himself." Article I, Section 10, of the Ohio Constitution contains nearly identical language. In order to protect a defendant's Fifth Amendment right against self-incrimination, statements resulting from custodial interrogations are admissible only after a showing that law enforcement officers have followed certain procedural safeguards. *See Miranda v. Arizona*, 384 U.S. 436 (1966). "Specifically, an individual must be advised prior to custodial interrogation that: 1) he has a right to remain silent; 2) any statement he makes may be used as evidence against him, and 3) he has a right to the presence of an attorney." *North Ridgeville v. Hummel*, 9th Dist. Lorain No. 04CA008513, 2005-Ohio-595, ¶ 27, citing *Miranda* at 444.

{¶33} The Fifth Amendment right against self-incrimination may be waived if it is done "voluntarily, knowingly, and intelligently." *Miranda* at 444. "'Voluntariness' is the absence of

physical and psychological coercion on the part of the police." *State v.* Ward, 9th Dist. Lorain No. 95CA006214, 1996 WL 425904, *1 (July 31, 1996). "'Coercion' means misconduct which overbore the defendant's free will in such a way as to be a violation of the federal Constitution's Fourteenth Amendment." *Id.*

{¶34} Mr. Gibbs does not dispute that he was advised of his *Miranda* rights after being placed in the backseat of Trooper Fowlers' cruiser. It is Mr. Gibbs' position that his statements given, both before and after he was *Mirandized*, were involuntary and were a result of coercion.

{¶35} After Mr. Gibbs was *Mirandized*, Trooper Fowler asked him if he had a firearm. Mr. Gibbs said that he did not have a firearm. Trooper Fowler again inquired as to whether there was a firearm in the truck, and Mr. Gibbs said that he was not sure but there might be one. When Trooper Fowler said that he was going to look in the truck for a firearm, Mr. Gibbs again said that there was no firearm in the vehicle. Mr. Gibbs subsequently admitted that there was a firearm in the side water bottle holder of his backpack.

{¶36} Trooper Fowler testified why he questioned Mr. Gibbs about the firearm. Mr. Gibbs previously told Trooper Fowler that he did not have a CCW. An ammunition cartridge was seen on the floor of the truck and Mr. Gibbs' demeanor had changed. Trooper Fowler testified that he had a concern for the safety of others as well as the officers. Trooper Fowler testified that he wanted to verify that Mr. Gibbs did not have a firearm before he let him go.

{¶37} The trial court found that there were no constitutional violations that overbore the will of Mr. Gibbs and coerced him into involuntarily speaking. The record, and this Court's conclusion when addressing Mr. Gibbs' first assignment of error support the conclusion.

{¶38} There is no evidence of coercive police conduct, nor is there any evidence that Mr. Gibbs' will was overborne and his capacity for self-determination impaired due to coercive police

conduct. Mr. Gibbs was pulled over for a traffic violation. The stop occurred along I-77 and it was dark outside. For safety reasons, Trooper Fowler had Mr. Gibbs come to the back of the cruiser to run his information and issue a citation. Once inside the cruiser, Trooper Fowler advised Mr. Gibbs of his *Miranda* rights. Mr. Gibbs was advised of his *Miranda* rights before he was questioned about whether a firearm was inside the truck. Appellant offers no evidence that there was any physical or psychological coercion or other police misconduct that so overbore his will to establish his statements were not voluntary. *State v Ward*, supra. As we previously concluded, Trooper Knowles lawfully saw the ammunition cartridge in plain view when looking into Mr. Gibbs' truck and, in light of his concern for officer safety and the safety of others, Trooper Knowles lawfully inquired about whether a firearm was in the vehicle.

{¶39} Accordingly, for the reasons set forth above, the trial court did not err in denying Mr. Gibbs' motion to suppress. Mr. Gibbs' second assignment of error is overruled.

III.

{¶40} Mr. Gibbs' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
SCOT STEVENSON
FOR THE COURT

FLAGG LANZINGER, J.
CONCURS.

CARR, P. J.
CONCURS IN JUDGMENT ONLY.


APPEARANCES:

D. COLEMAN BOND, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.