[Cite as *State v. Robinson*, 2021-Ohio-1053.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

ROGER ROBINSON

    Appellant

C.A. No.    29689

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 19 01 0013

DECISION AND JOURNAL ENTRY

Dated: March 31, 2021

---

TEODOSIO, Judge.

{¶1} Defendant-Appellant, Roger Robinson, appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} While patrolling Kenmore Boulevard in their marked cruiser, two police officers spotted a blue vehicle traveling ahead of them in the same direction. It was dark at the time, and the officers noted that the vehicle did not have a functioning rear license plate light. They followed the vehicle as it turned onto Fourth Street and, thereafter, initiated a traffic stop. Once the vehicle came to a stop, both officers exited their cruiser.

{¶3} As the officers approached the vehicle on foot, the driver looked over his shoulder at the officers and sped away. The officers then ran back to their cruiser, and a chase ensued. The car chase lasted about thirty seconds and reached speeds of around 50 mph in the residential area. It ended when the fleeing vehicle crashed into a small embankment and the driver jumped out and

ran. One officer chased the driver on foot several hundred yards before he succeeded in apprehending him. The police later identified the driver as Mr. Robinson.

{¶4} While one officer chased Mr. Robinson, his partner secured the vehicle that Mr. Robinson had abandoned. The police determined that Mr. Robinson had a front seat passenger and that her children were in the vehicle's backseat. One of the children was about five or six years of age and the other was an infant. The infant's car seat was not properly secured, and, during the crash, it dislodged and lurched toward the vehicle's back window.

{¶5} The police searched the vehicle and discovered a bag of white substance on the driver's side floorboard. They also searched Mr. Robinson incident to his arrest and found a digital scale in his pants pocket. When questioned, Mr. Robinson admitted that any drugs the police found in the vehicle belonged to him. The white substance they found was later tested and found to be methamphetamine.

{¶6} Relevant to this appeal, a grand jury indicted Mr. Robinson on one count of failure to comply, one count of aggravated possession of methamphetamine, and two counts of child endangering.[1] He moved to suppress the evidence against him, and the trial court held a hearing. At the conclusion of the hearing, the court denied the motion to suppress. The matter proceeded to trial, and a jury found Mr. Robinson guilty on all four counts. The trial court sentenced him to a total of six years in prison.

{¶7} Mr. Robinson now appeals from the trial court's ruling on his motion to suppress and his underlying convictions. He raises three assignments of error for our review.

II.

---

[1] Mr. Robinson also was indicted on charges relating to an incident that occurred six months before the incident giving rise to this appeal. His other charges were severed for trial and later dismissed. Because they are not relevant to our determination, this Court declines to address them.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED BY DENYING DEFENDANT'S MOTION TO SUPPRESS[.]

{¶8} In his first assignment of error, Mr. Robinson argues that the trial court erred by denying his motion to suppress. He argues that the police lacked reasonable suspicion to stop his vehicle and employed coercion to obtain his inculpatory statements. He further argues that the trial court's suppression ruling must be reversed because the court failed to include findings of fact in its written entry. For the following reasons, we reject Mr. Robinson's arguments.

{¶9} A motion to suppress presents a mixed question of law and fact:

When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Internal citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

Findings of Fact

{¶10} Initially, we address Mr. Robinson's argument that the trial court failed to make factual findings in support of its suppression ruling. Because appellate courts have a "limited standard of review" in appeals from suppression rulings they must rely on trial courts to "make findings about what [they] believed happened." *State v. Martin*, 9th Dist. Summit No. 24812, 2009-Ohio-6948, ¶ 14. "An absence of factual findings impedes our ability to review a suppression ruling * * *" and may require us to remand the matter for further proceedings. *State v. Martucci*, 9th Dist. Summit No. 28888, 2018-Ohio-3471, ¶ 11. *Accord State v. Purefoy*, 9th Dist. Summit No. 27992, 2017-Ohio-79, ¶ 18. A trial court must set forth its factual findings either in its written journal entry or on the record at the suppression hearing. *See State v. Thompson*, 9th Dist. Lorain

No. 18CA011292, 2019-Ohio-2269, ¶ 11; *State v. Shinholster*, 9th Dist. Summit No. 25328, 2011-Ohio-2244, ¶ 7.

{¶11} The record reflects that the trial court ruled on Mr. Robinson's motion to suppress at the conclusion of the suppression hearing. In doing so, it made several factual findings. The court found that the rear license plate light of the vehicle Mr. Robinson had been operating was not working and that officers lawfully stopped the vehicle based on that observation. It found that, as officers approached the vehicle, Mr. Robinson looked over his shoulder at them and fled, thereby giving the officers probable cause to pursue and detain him for a criminal offense. Finally, it found that Mr. Robinson made several inculpatory admissions before the police allegedly attempted to coerce him and, in any event, their tactics were not coercive. As to the latter point, the court found that the police merely conveyed certain truthful facts to Mr. Robinson.

{¶12} Mr. Robinson acknowledges that the trial court made certain factual findings on the record at the conclusion of his suppression hearing. It is his argument that those findings cannot be considered on appeal because a court speaks only through its written entries. The court's written entry, denying Mr. Robinson's motion to suppress, consists of a blanket statement that the motion is denied. Given that the entry is devoid of any factual findings, Mr. Robinson argues, the matter must be remanded for further proceedings.

{¶13} While it would have been ideal for the trial court to include its factual findings in its written entry, this Court has recognized that trial courts may set forth their factual findings on the record at the suppression hearing. *See Thompson*, 2019-Ohio-2269, at ¶ 11; *Shinholster*, 2011-Ohio-2244, at ¶ 7. The record supports the conclusion that the trial court made adequate factual findings in support of its ruling at the conclusion of Mr. Robinson's hearing on his motion to suppress. Thus, we reject his argument to the contrary.

Reasonable Suspicion to Conduct a Traffic Stop

{¶14} "To justify an investigative stop, an officer must point to 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *State v. Kordich*, 9th Dist. Medina No. 15CA0058-M, 2017-Ohio-234, ¶ 7, quoting *Maumee v. Weisner*, 87 Ohio St.3d 295, 299 (1999), quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968). "[W]here an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid * * *." *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12 (1996). An officer who observes a vehicle being operated without a functioning rear license plate may initiate a traffic stop based on that observation. *See State v. Lee*, 9th Dist. Summit No. 29597, 2020-Ohio-4970, ¶ 17; *State v. Reese*, 9th Dist. Medina No. 02CA0088-M, 2003-Ohio-2638, ¶ 10-11.

{¶15} The trial court found that the police stopped Mr. Robinson because they observed him operating a vehicle without a functioning rear license plate light. The court found that both city and state laws require the presence of a functioning light. Because the light was not functioning, the court concluded that the police were justified in stopping the vehicle.

{¶16} Mr. Robinson concedes that a minor traffic violation may give rise to either reasonable suspicion or probable cause to conduct a traffic stop. He argues that the trial court erred when it denied his motion to suppress because there was insufficient evidence that he committed a traffic violation. He notes that there was no dashcam recording to verify the officer's claim that the rear license plate light was not functioning. He also notes that his license plate appears to be illuminated in the recording taken from the officer's body camera. The essence of his argument is that one of the trial court's findings (i.e., that the rear license plate light was not functioning) is not based on competent, credible evidence.

{¶17} Upon review, we must conclude that the record contains competent, credible evidence in support of the trial court's finding that Mr. Robinson was operating a vehicle without a functioning rear license plate light. *See Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. Officer Daniel Fashempour testified that it was dark when he observed the vehicle and the vehicle's rear plate was "very clearly" not illuminated. He testified that his cruiser was not equipped with a dashcam and, to the extent his body camera briefly captured the vehicle's rear plate when he exited his cruiser, any illumination that appeared on that recording was caused by the headlights of his cruiser reflecting off the back of the vehicle. The trial court was in the best position to evaluate his credibility and resolve the matter of whether the vehicle's rear license plate light was functioning. *See Lee*, 2020-Ohio-4970, at ¶ 16. Because the record supports the court's finding that the light was out, we reject Mr. Robinson's argument to the contrary.

Coerced Statements

{¶18} Next, Mr. Robinson argues that the trial court should have suppressed inculpatory statements he made in the wake of his arrest because officers obtained those statements through coercion. The police informed Mr. Robinson that, if he did not tell them the truth about the drugs they found in the vehicle, his female passenger would be facing drug charges and CSB would be contacted regarding her children. According to Mr. Robinson, that police conduct was coercive and led him to make involuntary statements.

{¶19} Assuming without deciding that the police employed coercion to obtain certain statements from Mr. Robinson, the record supports the conclusion that any error in the admission of those statements was harmless beyond a reasonable doubt. *See State v. White*, 9th Dist. Summit No. 19930, 2001 WL 169086, *4 (Feb. 21, 2001). The trial court specifically found that, before the police spoke to Mr. Robinson about his front seat passenger or her children, he made two

inculpatory admissions. Mr. Robinson has not addressed the significance of those admissions, *see* App.R. 16(A)(7), but, upon review, the record contains competent, credible evidence in support of the trial court's finding. *See Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. In the recording taken from Officer Fashempour's body camera, Mr. Robinson can be heard telling the officer that any drugs found in the vehicle belonged to him and that he took full responsibility for everything the police found in the vehicle. At that point, the officers had yet to discuss the front seat passenger or her children. When the officers later advised Mr. Robinson of the consequences that might befall his passenger and her children if he could not identify the type of drug(s) they found in the vehicle, he merely reiterated that all of the drugs belonged to him. Accordingly, those inculpatory statements were identical to the ones he had made earlier. Mr. Robinson has not argued that his earlier statements were a product of coercion. *See* App.R. 16(A)(7). Given that his later statements simply mirrored his earlier ones, we must conclude any error in the admission of his later statements was harmless beyond a reasonable doubt. *See White* at *4. Mr. Robinson's argument that the trial court erred by denying his motion to suppress lacks merit. As such, his first assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

THE VERDICT OF THE TRIAL COURT WAS AGAINST THE MANIFEST
WEIGHT OF THE EVIDENCE[.]

{¶20} In his second assignment of error, Mr. Robinson argues that his conviction for failing to comply is against the weight of the evidence. He argues that the jury lost its way when it found that he created a substantial risk of serious physical harm to persons or property. We do not agree.

{¶21} This Court has stated:

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

{¶22} The failure to comply statute forbids any person from operating a motor vehicle "so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." R.C. 2921.331(B). Failure to comply is a third-degree felony if, in failing to comply, "[t]he operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property." R.C. 2921.331(C)(5)(a)(ii). "Serious physical harm to persons includes any physical harm that carries a substantial risk of death; involves permanent incapacity or disfigurement or temporary substantial incapacity or disfigurement; or that involves 'acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.'" *State v. Flynn*, 9th Dist. Medina No. 06CA0096-M, 2007-Ohio-6210, ¶ 21, quoting R.C. 2901.01(A)(5).

{¶23} Officer Fashempour and his partner, Officer Adam Semchee, both testified about the motor vehicle chase that ensued when they attempted to stop Mr. Robinson. The officers testified that, when the chase occurred, it was dark, but relatively early in the evening (i.e., around

5:30 p.m.). They testified that the chase occurred in a residential area. Officer Semchee indicated that the location and time of the chase created a public safety concern because it was common for people to still be outside at that time of day. Officer Fashempour stated that their cruiser reached speeds of 50 m.p.h., but nevertheless remained some distance behind Mr. Robinson's vehicle. Officer Semchee described how it appeared that Mr. Robinson lost control of the vehicle, as it began going in and out of the opposite lane of travel. Both officers testified that the crash ended when the vehicle left the roadway and crashed into an embankment in someone's front yard.

{¶24} Officer Semchee testified that, when the vehicle crashed, he realized there was an infant in the vehicle's backseat. He stated that he saw the infant and the infant's car seat "[fling] up to the back window" during the crash. He and another officer subsequently inspected the infant's car seat and determined that it had not been properly secured. He agreed that the unsecured car seat, standing alone, posed a risk of injury to the infant. He also testified that a second child around five or six years of age was sitting in the backseat when chase occurred.

{¶25} Having reviewed the record, we cannot conclude that the jury clearly lost its way and created a created a manifest miscarriage of justice when it found that Mr. Robinson caused a substantial risk of serious physical harm to persons or property. *See Otten*, 33 Ohio App.3d at 340. The jury heard testimony that he led the police on a chase through a residential area, in the dark, at a time when residents may have been outside. They heard testimony that the chase reached speeds of at least double the posted speed limit, that Mr. Robinson lost control of the vehicle, and that he crashed into an embankment in someone's front lawn. Further, they heard testimony that there were two young children in the backseat of the vehicle, one of whom was an infant whose car seat had not been properly secured. The jury reasonably could have concluded that Mr. Robinson's actions placed others at a substantial risk of serious physical harm. *See* R.C.

2921.331(C)(5)(a)(ii). The fact that no actual harm occurred "speaks to nothing more than [his] good luck * * *." *State v. Love*, 9th Dist. Summit No. 21654, 2004-Ohio-1422, ¶ 19. Mr. Robinson has not shown that this is the exceptional case where the jury lost its way by convicting him. *See Otten* at 340. Accordingly, his second assignment of error is overruled.

**ASSIGNMENT OF ERROR III**

THE TRIAL COURT ERRORED (sic) BY ADMITTING A PHOTOGRAPH OF A SCALE LOCATED ON APPELLANT AS IT WAS IRRELEVANT, UNFAIRLY PREJUDICIAL, AND CONFUSED OR MISLEAD (sic) THE JURY IN VIOLATION OF EVID.R. 401, 402, AND 403[.]

{¶26} In his third assignment of error, Mr. Robinson argues that the trial court abused its discretion when it admitted a photograph of the digital scale the police found in his pants pocket. Because he was not charged with possession of drug paraphernalia, Mr. Robinson argues, the photograph was irrelevant and only served to inflame the jury. For the following reasons, we reject his argument.

{¶27} This Court generally reviews a trial court's decision to admit or exclude evidence for an abuse of discretion. *State v. Andrews*, 9th Dist. Summit No. 29260, 2020-Ohio-2703, ¶ 34. It is axiomatic, however, that this Court will disregard any error that does not affect a defendant's substantial rights. *See* Crim.R. 52(A). If the State sets forth sufficient evidence of a defendant's guilt, independent of any improperly admitted evidence, then any error in the admission of that evidence is harmless beyond a reasonable doubt and "reversal is unwarranted." *State v. Tillman*, 119 Ohio App.3d 449, 460 (9th Dist.1997).

{¶28} At the beginning of his trial, Mr. Robinson made an oral motion in limine to exclude any testimony related to the digital scale that the police found in his pants pocket when searching him incident to his arrest. The State argued that the scale was relevant because the vehicle had multiple occupants, scales are commonly used in connection with drug activity, and Mr.

Robinson's possession of the scale created an inference that the drugs found in the vehicle belonged to him. The trial court agreed to allow testimony about the scale and overruled Mr. Robinson's motion in limine. At trial, Officer Fashempour testified that the police found a digital scale in Mr. Robinson's pants pocket and that scales of that sort are commonly used to measure drugs. The State also introduced a photograph of the scale that the police confiscated from Mr. Robinson. Mr. Robinson objected when the State later moved to admit the photograph, arguing that the court should exclude it for the reasons set forth in his motion in limine.

{¶29} Mr. Robinson argues that the trial court abused its discretion when it admitted the photograph of the scale the police found in his pants pocket. He argues that the photograph was irrelevant and only served to inflame the jury. Yet, he has not addressed the admission of the testimony underlying the photograph. *See* App.R. 16(A)(7). Even if the trial court erred when it admitted the photograph, the jury heard testimony that he was in possession of a digital scale and that digital scales are commonly used to measure drugs. Moreover, they heard testimony that the drugs the police found where found on the floorboard of the seat he had just vacated and that he admitted any drugs the police found in the car belonged to him. Mr. Robinson has not explained how he was prejudiced by the admission of the photograph given the other testimony and evidence introduced at trial. Even if the court erred by admitting the photograph, the record supports the conclusion that its error was harmless. *See Tillman*, 119 Ohio App.3d at 460; Crim.R. 52(A). Thus, Mr. Robinson's third assignment of error is overruled.

III.

{¶30} Mr. Robinson's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

CARR, P. J.
HENSAL, J.
CONCUR.


APPEARANCES:

ERIK E. JONES, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.